

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
09/14/2018

| | | |
|---|---|---|
| **IN RE:** | § | |
| **NORTHSTAR OFFSHORE GROUP, LLC** | § | **CASE NO: 16-34028** |
|     Debtor(s) | § | |
| | § | **CHAPTER 11** |
| | § | |
| **NORTHSTAR OFFSHORE GROUP, LLC** | § | |
|     Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 17-03448** |
| | § | |
| **PEREGRINE OIL & GAS LP,** *et al* | § | |
|     Defendant(s) | § | |

## <u>MEMORANDUM OPINION</u>

Northstar Offshore Group, LLC initiated an adversary proceeding to collect unpaid debts it claims are owed under Production Handling Agreements with Peregrine Oil and Gas, LP ("Peregrine") and Peregrine Oil and Gas II, LLC ("Peregrine II"). (ECF No. 1 at 3).

In response, Peregrine filed counterclaims against Northstar alleging tortious interference with existing contracts and prospective business relationships. (ECF No. 12 at 3). Peregrine II also filed counterclaims against Northstar asserting that Northstar breached the Offshore Operating Agreement between the parties. (ECF No. 12 at 10).

Northstar filed a motion to dismiss Peregrine and Peregrine II's counterclaims, alleging that, under Federal Rule of Civil Procedure 12(b)(6), both Peregrine and Peregrine II's counterclaims fail to state a claim upon which relief may be granted. (ECF No. 15 at 11–24).

Northstar's motion to dismiss is granted with respect to Peregrine's counterclaims for tortious interference with prospective and existing contracts as well as Peregrine II's claims for breach of contract of the Offshore Operating Agreement.

## Background

Northstar is an oil and gas company headquartered in Houston, Texas, focused on offshore oil and gas exploration.  (Case No. 16-34028; ECF No. 106 at 5).  In 2012, Northstar shifted the focus of its business from actively producing oil and gas wells to the discovery of new oil fields, after which it began leveraging debt to finance its exploration and test drilling.  (Case No. 16-34028; ECF No. 106 at 6–7).

During this time, Northstar entered into a Production and Handling Agreement ("PHA") in 2007 with Peregrine that obligated Peregrine to pay Northstar for the processing, handling, and transportation of oil and gas produced from the High Island Area oil field.  (ECF No. 1 at 3).  Under the PHA, Northstar was to accept all of Peregrine's High Island production and route it through Northstar's six inch pipeline, which was the only option for Peregrine to send its production to shore.  (ECF No. 12 at 4–5).

Northstar entered into a similar Offshore Operating Agreement ("OOA") with Peregrine II that covered the oil and gas recovered from the West Cameron oil field.  (ECF No. 1 at 3).  The OOA allowed Peregrine II to send production from its West Cameron well to Northstar's processing facility.  (ECF No. 12 at 10).  Northstar then contracted with the Starfish Pipeline Company ("Starfish Contracts") to use the Starfish Pipeline for transporting production from Northstar's processing facility to shore.  (ECF No. 12 at 11).

Both the PHA and OOA required Peregrine and Peregrine II to pay Northstar's monthly invoices within 30 days or the amounts due would begin accruing interest.  (ECF No. 1 at 3).

By the second half of 2014, oil prices began to drop, which coincided with a criminal fraud investigation into the Platinum Partner entities that formed Northstar's parent organization.  (Case No. 16-34028; ECF No. 106 at 25).  These events caused Northstar to experience a

liquidity crisis and made it difficult to continue its operations in the Gulf of Mexico.  (Case No. 16-34028; ECF No. 106 at 25).

Northstar's financial situation came to a head on August 12, 2016, when three creditors filed an involuntary bankruptcy petition for Northstar pursuant to 11 U.S.C. § 303.  (Case No. 16-34028; ECF No. 106 at 25).  At Northstar's request, the Court granted relief and converted Northstar's case to a voluntary case under chapter 11 on December 2, 2016.  (ECF No. 15 at 7).

Northstar subsequently filed this adversary proceeding, alleging that Peregrine owed $204,503.65 stemming from unpaid invoices due under the High Island PHA, and that Peregrine II owed $130,626.20 in unpaid invoices from the West Cameron PHA.  (ECF No. 1 at 3–4). Northstar claims that these debts are "outstanding, matured, payable on demand and past due" and are therefore payable to Northstar under 11 U.S.C. § 542(b).  (ECF No. 1 at 4).

In response, Peregrine filed a counterclaim against Northstar alleging that Northstar's termination of the High Island PHA forced Peregrine to shut in its production from its High Island well and tortiously interfered with its business relationships and existing contracts.  (ECF No. 12 at 9).  Peregrine II also filed a counterclaim, claiming that Northstar breached its contractual obligations under the West Cameron OOA after Northstar rejected the Starfish Pipeline Contracts during its bankruptcy proceedings.  (ECF No. 12 at 13).  Peregrine II argues that Northstar remains liable under the OOA despite rejecting the Starfish Contracts, and that Northstar's refusal to handle Peregrine II's production from West Cameron constitutes a breach of the OOA.  (ECF No. 12 at 13).

Northstar filed a motion to dismiss Peregrine and Peregrine II's counterclaims on February 1, 2018, claiming that the counterclaims fail to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 15 at 11–12).  Specifically,

Northstar argues that Peregrine and Peregrine II's counterclaims are barred for failure to timely file a proof of claim.  (ECF No. 15 at 11, 17).  Northstar further claims that tortious interference of Peregrine's contractual relationships cannot exist because Northstar followed the termination requirements of the PHA.  (ECF No. 15 at 14).  Similarly, Peregrine II's breach of contract counterclaim should be dismissed because Peregrine II failed to plead sufficient facts establishing how Northstar's rejection of the Starfish Contracts led to a breach of the OOA and that Peregrine II was harmed by the mere fact that Northstar sent invoices.  (ECF No. 15 at 23–26).

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A),(B), and (O).

## Analysis

*Motion to Dismiss*

The Court reviews motions under Rule 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."  *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).  However, the Court "will not strain to find inferences favorable to the plaintiff."  *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements.  Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Ashcroft v. Iqbal,* the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct."  556 U.S. 662, 679 (2009) (quoting

Rule 8(a)(2)).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks removed).

<u>Failure to File a Proof of Claim</u>

Northstar argues that Peregrine and Peregrine II's counterclaims should be dismissed under Rule 12(b)(6) for failure to file a proof of claim prior to the claims bar date passing on March 3, 2017.  (ECF No. 15 at 12).  Northstar alleges that these counterclaims are barred under the terms of its confirmed plan, which "contains the prerequisite that a proof of claim be filed under [11 U.S.C. § 501]."  (ECF No. 15 at 12).  In response, Peregrine filed a motion for leave to late file and amend proofs of claim, alleging that Peregrine's failure to file formal proofs of claim was the result of excusable neglect, and that the Court should allow Peregrine II to amend the information in its informal proof of claim.  (*See* Case No. 16-34028; ECF No. 1101 at 4–6).

The Court held a hearing on the issue of whether Peregrine and Peregrine II should be granted leave to late file and amend proofs of claim in support of its counterclaims.  At the conclusion of the hearing, the Court requested that the parties brief the narrower issue of whether recoupment exists in these transactions.  (ECF No. 38 at 79).

*Recoupment versus Setoff*

The theory of recoupment allows a defendant to reduce liability on a claim by "asserting a claim against the plaintiff which arose out of the same transaction."  *U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., Inc. (In re U.S. Abatement Corp.)*, 79 F.3d 393, 398 (5th

Cir. 1996).  On the other hand, setoff involves a defendant's claims against a plaintiff that arise

out of a separate transaction from the plaintiff's claim against the defendant.  *Holford v. Powers

(In re Holford)*, 896 F.2d 176, 178 (5th Cir. 1990).  Given the difference in how these claims

arise, courts have viewed recoupment as an equitable remedy that is unbound by the restrictions

on setoff that arise from the claims allowance process.  *In re ABCO Indus., Inc*., 270 B.R. 58, 63

(Bankr. N.D. Tex. 2001) (quoting *Aetna Life Ins. Co. v. Bram (In re Bram)*, 179 B.R. 824, 827

(Bankr. E.D. Tex. 1995)).

As a result, if Peregrine and Peregrine II's counterclaims arise from recoupment, they

would potentially be allowed even absent the proper filing of a proof of claim.  *Id.*  Conversely,

if they arise from a setoff, they are subject to restrictions imposed by the claims allowance

process.  *ABCO Indus.*, 270 B.R. at 63; 11 U.S.C. § 502(a) (requiring compliance with proof of

claim process in § 501).

*Single Integrated Transaction*

The key feature which distinguishes recoupment from setoff is that "the creditor's claim

against the debtor *arises from the same transaction as the debtor's claim*."  *U.S. Abatement*, 79

F.3d at 398.  Since recoupment is not subject to the claims allowance process, a debtor has no

interest in property that is subject to a right of recoupment.  *Id.*

Northstar alleges that the counterclaims fail to satisfy the single transaction requirement

because they involve "different contracts and involve different sets of oil and gas properties."

(ECF No. 52 at 9).  Peregrine and Peregrine II assert that the counterclaims arise from two

separate transactions, each of which is part of a single integrated transaction, which in turn

individually satisfies the standard for recoupment.  (ECF No. 50 at 12).

Peregrine argues that its claims arise from the High Island PHA, and that Northstar's actions denied access to a natural gas pipeline, making Peregrine's performance under existing and potential natural gas contracts impossible.  (ECF No. 12 at 8–9).  Peregrine specifically points to these natural gas contracts as the source of its damages it seeks to recoup through its counterclaims.  (ECF No. 12 at 8–9).

However, in alleging that Peregrine's damage was incurred through separate contracts outside of the PHA, Peregrine has failed to satisfy the single integrated transaction requirement of recoupment.  The classic recoupment example involves an overpayment by a buyer to a seller, which benefits the seller to the buyer's detriment.  *Herod v. Southwest Gas Corp. (In re Gasmark Ltd.)*, 193 F.3d 371, 374 (5th Cir. 1999).  In this example, the agreement to purchase makes up the single integrated transaction while recoupment corrects the inequity which occurred through overpayment.

Rather than point to damage which occurred under the PHA, Peregrine alleges that its damage was incurred by its inability to perform contracts outside of the PHA.  (ECF No. 12 at 8–9).  This strays from the paradigmatic example of recoupment where a single agreement gives rise to the damage to the party at issue.  Peregrine's alleged damages all arise from its inability to perform or enter into contracts with third parties.  The PHA gives rise to Northstar's claim against Peregrine, but it is the contracts with third parties which gives rise to Peregrine's claims against Northstar.  As a result, Peregrine has failed to meet the single integrated transaction requirement in its counterclaims against Northstar.

Similarly, Peregrine II alleges that Northstar's invoicing of platform expenses violates the "Letter Agreement" issued on September 11, 2015 which required the West Cameron well owners and Northstar to continue good faith negotiations.  (ECF No. 12 at 12, 14).  While the

OOA gave rise to Northstar's claim for amounts Peregrine II owed, Peregrine II uses the breach of "obligations under the letter agreement" as the basis for its counterclaim. Accordingly, this allegation does not fit the single integrated transaction required to recoup against a claim.

On the other hand, the OOA serves as the single transaction for Peregrine II's claims of failure to perform work in a good and workman like manner as well as gross negligence and willful misconduct against Northstar. Northstar alleges that the OOA entitles them to payment from Peregrine II. (ECF No. 1 at 5). Peregrine II counterclaims that Northstar breached its duties under the OOA after it rejected the Starfish Contracts during its bankruptcy. (ECF No. 12 at 13). The OOA serves as a single transaction between both Peregrine II and Northstar which give rise to both parties' claims. Peregrine II has pled sufficient facts with respect to these two counterclaims to satisfy the single integrated transaction requirement.

*Equitable Interests*

Even if the same transaction requirement is satisfied, recoupment remains an equitable doctrine which seeks to determine the "just liability on [a] claim." *U.S. Abatement*, 79 F.3d at 399–400. Accordingly the Court must also examine whether equity allows Peregrine and Peregrine II to recoup their counterclaims against Northstar.

The Fifth Circuit considered the equitable aspects of recoupment in *Herod v. Southwest Gas Corp. (In re Gasmark Ltd.)*, 193 F.3d 371, 374 (5th Cir. 1999). In *Gasmark*, the parties entered into a bilateral contract that obligated a Buyer to purchase an amount of gas per month that the Producer was required to provide. *Id*. at 373. The Producer ran into financial difficulties and defaulted on its required gas quota for the last two months of the contract. *Id*. Before the Producer filed for bankruptcy, the Buyer owed the Producer $769,648.69 for gas delivered in prior months. *Id*. The Buyer sought to reduce the amount of debt owed by recouping the

damages from the Producer's breach against the amount owed.  *Id*.  The Fifth Circuit held that without a benefit conferred on the Producer or harm to the Buyer, the equitable considerations of the case did not support applying "the narrow doctrine of recoupment."  *Id*.

In its counterclaim for tortious interference with prospective business relationships, Peregrine alleged that it has business relationships with "natural gas purchasers that have not yet been reduced to a contract" and that Northstar's actions "intentionally interfered with those prospective relationships."  (ECF No. 12 at 8).  However, the damage Peregrine cites falls short of the equitable standard established in *Gasmark* which requires that harm occur to the party in question.  *Id*.  Peregrine points to hypothetical contracts which have yet to be memorialized as the basis for its recoupment claim.  (ECF No. 12 at 8).  This allegation requires that the Court assume that Peregrine would have ultimately entered into such agreements and fully performed but for Northstar's interference.   Similar to *Gasmark*, with the alleged harm remote and contingent upon other factors, equitable considerations prevent application of the doctrine of recoupment.

Peregrine also alleges that Northstar's actions interfered with existing contracts which require that Peregrine produce and deliver natural gas to various purchasers.  Peregrine alleges that when Northstar denied Peregrine access to its pipeline, Peregrine was unable to fulfill these contracts and suffered damage as a result.  However, Peregrine failed to identify the parties to these contracts, and failed to specify specific damages incurred as a result of its inability to perform.  (*See* ECF No. 12 at 9).  As a result, without proper information regarding the extent of the damages that Peregrine incurred, it would be similarly inequitable to apply the doctrine of recoupment to the transaction.

Peregrine II alleged that Northstar's actions led to breaches of Northstar's duties under the OOA which have led to its inability to produce natural gas from the well which "*may* result in the loss of the oil and gas lease" amounting to $2,000,000.00 in losses. (ECF No. 12 at 14 (emphasis added)). Peregrine II alleges that the damage in question will occur and that the "oil and gas lease *will* revert to the Department of the Interior" in the absence of production. (ECF No. 12 at 14). In *Gasmark*, although the buyer and producer both had liquidated damages that arose from a single transaction, the Fifth Circuit still "felt no equitable tug" to allow recoupment since no injury or benefit was conferred on the parties. 193 F.3d at 375. Although it is possible that the damage Peregrine II alleges may occur in the future, the counterclaim states that it has not yet occurred. As a result, it would be inequitable to apply the doctrine of recoupment, which seeks to determine a *just liability* on a claim, to the situation in which the alleged damage has yet to occur. *Id*.

Peregrine II's counterclaim alleges two more causes of action based on the OOA: (i) that Northstar's failure to agree to rework the well to increase production breached its duty to perform operations in a good and workman like manner; and (ii) that Northstar's actions constitute gross negligence and willful misconduct in violation of the OOA. (ECF No. 12 at 14). As discussed earlier, the Fifth Circuit narrowly construed recoupment to apply to situations where a benefit is conferred on a party to the detriment of another. *Id*. Of these allegations, none of Peregrine II's counterclaims fits this narrow mold. These claims fail to demonstrate how a benefit was conferred on Northstar at Peregrine II's expense. The purpose of recoupment is to determine just liability on a claim; although Peregrine alleged that Northstar's actions caused it harm, it has failed to plead sufficient facts that demonstrate how a benefit was conferred on Northstar required for recoupment against a claim. *Id*.

*Setoffs Under the Claims Allowance Process*

Northstar argues that Peregrine's failure to timely file a proof of claim and Peregrine II's failure to include information regarding its right to setoff in its proof of claim precludes either party from asserting a right to setoff in this case because doing so would disrupt its confirmed plan.  (ECF No. 52 at 4–5).

A valid right to setoff under 11 U.S.C. § 553 requires: (i) a debt owed by the creditor to the debtor that arose prior to commencement of the bankruptcy case; (ii) a claim of the creditor against the debtor that arose prior to the commencement of the bankruptcy case; and (iii) the debt and claim are mutual obligations—involving the same parties standing in the same capacity. *In re Luongo*, 259 F.3d 323, 334 (5th Cir. 2001).   Some courts have held that there is no requirement that a proof of claim be filed in order to *defensively* assert a valid setoff.   *In re Columbia Hosp. for Women Med. Ctr., Inc.*, 461 B.R. 648 (Bankr. D.C. 2011).  However, courts have held that a proof of claim is required when a creditor asserts a counterclaim that seeks an affirmative recovery against the debtor's estate because doing so implicates the claims allowance process.  *In re G.S. Omni Corp.*, 835 F.2d 1317, 1318–19 (10th Cir. 1987) (holding that although setoff rights may survive discharge, failure to file a proof of claim bars participation in distribution of the estate); *In re Concept Clubs, Inc.*, 154 B.R. 581, 589 (Bankr. Utah 1993).

Peregrine and Peregrine II's claims are barred under 11 U.S.C. § 553(a)(1), which permits setoff unless "the claim of such creditor against the debtor is disallowed."  Under the terms of Northstar's confirmed plan of liquidation, "Allowed Claims" are defined as claims that are either listed in the bankruptcy schedules or have "timely filed proofs of claim."  (Case No. 16-34028; ECF No. 966 at 1).  Peregrine failed to timely file a proof of claim before the bar date. Similarly, although Peregrine II filed a proof of claim, it included only "prospective P&A

liability" as the basis for its proof of claim and failed to include any information regarding the alleged cause of action in its counterclaim, which arises from Northstar's breach of the OOA. (*See* Proof of Claim No. 146 at 3).

Neither Peregrine nor Peregrine II's counterclaims adhere to the claims allowance process in Northstar's confirmed plan of liquidation, nor to the requirement of § 502(a) that requires that a proof of claim be filed for an allowed claim.  Consequently, even if a valid right to setoff was established in these counterclaims, they would be disallowed under § 553(a)(1). *See also In re ABCO Indus., Inc.*, 270 B.R. 58, 63 (Bankr. N.D. Tex. 2001) (holding "when a proof of claim is actually filed and eventually disallowed, § 553(a)(1) is clear that setoff is not to be permitted.").[1]

The counterclaims filed by both Peregrine and Peregrine II fail to meet the Fifth Circuit's narrow standard for recoupment.  Similarly, the claims fail to meet the Bankruptcy Code's standards for a valid setoff under 11 U.S.C. § 553(a).  Because these claims are barred under Northstar's confirmed plan of liquidation, Northstar's motion to dismiss is granted.  The Court reserves judgment on Northstar's remaining arguments regarding whether tortious interference may exist under the PHA and whether Peregrine II could be injured by Northstar's invoice.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **September 14, 2018.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

---

[1] Peregrine and Peregrine II have filed a motion to late file and amend proofs of claim.  This motion is separately considered in a Memorandum Opinion and Order in Case No. 16-34028.